**UNITED STATES, Appellee,**

v.

**Ira Glen Anthony WALTERS,
Defendant, Appellant.**

**UNITED STATES, Appellee,**

v.

**Neville Anthony WILLIAMS,
Defendant, Appellant.**

**UNITED STATES, Appellee,**

v.

**Patrick O. MATTIS,
Defendant, Appellant.**

**UNITED STATES, Appellee,**

v.

**Andrew Jonathan BAINES,
Defendant, Appellant.**

Nos. 88–2106 to 88–2109.

United States Court of Appeals,
First Circuit.

Heard March 5, 1990.

Decided May 31, 1990.

Lisa Parlagreco, with whom James S. Dilday and Grayer, Brown & Dilday, were on brief, for defendant, appellant Ira Glen Anthony Walters.

Charles McGinty, Federal Defender Office, for defendant, appellant Neville Anthony Williams.

Jonathon M. Feigenbaum, with whom Richard M. Passalacqua, was on brief, for defendant, appellant Patrick O. Mattis.

James B. Dolan, with whom Badger, Dolan, Parker & Cohen, was on brief, for defendant, appellant Andrew Jonathan Baines.

Robert Ullmann, Asst. U.S. Atty., with whom Wayne A. Budd, U.S. Atty., was on brief, for appellee.

Before CAMPBELL, Chief Judge, BOWNES, Senior Circuit Judge, and CYR, Circuit Judge.

BOWNES, Senior Circuit Judge.

Ira Glen Anthony Walters (Walters), Neville Anthony Williams (Williams), Patrick Mattis (Mattis) and Andrew Johnson Baines (Baines) appeal their convictions for participating in a cocaine distribution conspiracy between December, 1986, and April, 1987. The appellants and eight other alleged co-conspirators were charged, in varying combinations, with conspiring to possess cocaine with intent to distribute, 21 U.S.C. §§ 841 & 846, possession of cocaine with intent to distribute, 21 U.S.C. § 841(a)(1), and using or carrying a firearm during and in relation to a drug trafficking crime, 18 U.S.C. § 924(c).[1] The appellants were found guilty by a jury on all counts. We affirm.

Before considering each of the issues on appeal, we briefly recount[2] the facts, taking the evidence as we must, in the light most favorable to the government. The appellants participated in a drug conspiracy operating out of three apartments in Boston (318 Fuller Street, 37 Westmore Street and 9 Topalian Street). The primary evidence against the defendants was the testimony of Lisa Gray, Williams' girlfriend during part of the conspiracy, who lived behind the Westmore Street apartment, and Herbert Beeche, a resident of 37 Westmore Street, who was shot in the leg by Olgivie Williams, a defendant below who has not appealed, and Walters. Gray and Beeche testified about the many drug sales they witnessed and the guns they saw during those transactions. In addition, the police searches of the Fuller Street and

---

1. Four of the twelve parties charged in the indictment are still at large and have not been arrested yet. Two of the defendants in the trial, Olgivie Williams and Colin Isaacs have not appealed. The two other parties, Dalton Green and Wayne Thompson, had their cases severed. Dalton Green's conviction was affirmed by this court in *United States v. Green*, 887 F.2d 25 (1st Cir.1989). Wayne Thompson pled guilty to the single count on which he was charged.

2. A more detailed account can be found in *United States v. Green*, 887 F.2d 25, 26–27 (1st Cir. 1989).

Topalian Street apartments and the Nelson Street apartment building where Walters lived uncovered cocaine, drug paraphernalia (scales, etc.), firearms and other items. During the government's case-in-chief, several of the firearms and rounds of ammunition seized, including weapons found during a search of the basement of the Nelson Street building, were admitted into evidence. Also admitted into evidence was a single color photograph of Walters which was seized during the search of his apartment. Other evidence, including a videotape of some of the appellants, plane tickets and other items, was also admitted into evidence. The appellants take issue with a number of rulings below.

## I.

Defendant-appellant Walters raises two issues involving the admission of the photograph: that it violated Fed.R.Evid. 404(b); and that it was not properly authenticated as required under Fed.R.Evid. 901.

The photograph is a posed shot showing Walters kneeling on the floor, facing the camera, and holding what appears to be a large pistol. The back of the photograph is stamped "OCT 1986." The crimes charged in the indictment covered a period from December, 1986, through April, 1987. Walters argues that the photograph's sole purpose at trial was to impermissibly demonstrate that he had a propensity to carry firearms thus showing "bad character."

■ In reviewing a trial court's ruling pursuant to Rule 404(b)[3], the pertinent inquiry is whether the trial court abused its discretion in admitting the challenged evidence. *United States v. Fields*, 871 F.2d 188, 196 (1st Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 369, 107 L.Ed.2d 355 (1989); *United States v. Rubio–Estrada*, 857 F.2d 845, 846 (1st Cir.1988). We give "considerable leeway" to the district court in its decision. *United States v. Simon*, 842 F.2d 552, 555 (1st Cir.1988). As we have

said repeatedly, " 'only in exceptional circumstances will we reverse the exercise of a district court's informed discretion vis-a-vis the relative weighing of probative value and unfairly prejudicial effect.' " *United States v. Currier*, 836 F.2d 11, 18 (1st Cir.1987) (quoting *United States v. Griffin*, 818 F.2d 97, 101–02 (1st Cir.1987)).

■ The use of "bad acts" evidence is not limited to those uses listed in the rule. So long as the trial court determines (1) that the proffered evidence is relevant to an issue other than character, and (2) that the evidence, if relevant, is not more prejudicial than probative, the use of the evidence is proper. *Fields*, 871 F.2d at 196; *United States v. Flores–Perez*, 849 F.2d 1, 4 (1st Cir.1988).

■ The initial question is whether the photograph was relevant to any issue other than illustrating defendant's bad character. Evidence is relevant if it has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R. Evid. 401. Walters was indicted for using or carrying a firearm during, and in relation to, drug trafficking. One of the issues to be determined at trial was the connection, if any, between the guns seized in the searches of the Fuller Street apartment and the basement of the Nelson Street apartment building and Walters. Walters argues that there was no connection between the photograph and any of the crimes with which he was charged. We disagree.

When Walters objected to the introduction of the photograph, the district court judge immediately ruled on the objection stating:

I don't think I will need any argument by the Government. I think the photograph is highly probative and connects him with what apparently—I'm just saying "apparently"—what I would infer to be one

---

3. Rule 404(b) states that:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible

for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

of the weapons that has been—all I'm saying is "apparently"—so I'm expecting that the argument will go from there. I can't say that that is the weapon that sat on that witness box.

The district judge determined that sufficient similarity existed between the gun held by Walters in the photograph and one of the guns marked as an exhibit to warrant the admission of the photograph.[4] If the jury interpreted the photograph the same way, this would connect Walters to the guns admitted into evidence. It, therefore, met the test of relevancy under Fed. R.Evid. 401. *See United States v. Green,* 887 F.2d 25, 27 (1st Cir.1989) (holding same guns relevant to severed defendants).

The next question is whether the photograph's "probative value [was] substantially outweighed by the danger of unfair prejudice." Fed.R.Evid. 403. Walters argues that the photograph was unfairly prejudicial because (1) it was taken in Florida and not in Boston where the crimes occurred, (2) it was taken prior to the alleged conspiracy, and (3) there was no expert testimony linking the gun in the photograph to any of those admitted into evidence.

Walters had the opportunity to show on cross-examination that the photograph was taken in a location other than Boston and taken prior to the commission of the crimes charged in the indictment, and he did so. Walters also had an opportunity to discredit the link between the gun in the photograph and the gun seized, but he chose not to. With these opportunities available, we cannot say that the district court abused its discretion in ruling that the photograph's probative value was not substantially outweighed by the photograph's prejudicial effect.

Finally, the defendant, for the first time on appeal, claims that the photograph was not properly authenticated and therefore, inadmissible. Federal Rule of Evidence 103(a)(1) requires that objections at trial not only be made on time but that the grounds of the objection be specific. The reason for such a requirement is to alert the trial court and the other party to the grounds of the objection so that it may be addressed or cured. *See Bryant v. Consolidated Rail Corp.,* 672 F.2d 217, 220 (1st Cir.1986). At trial the defendant failed to specify inadequate authentication as a ground for his objection. We, therefore, decline to consider this argument on appeal.[5]

## II.

■ We now turn to the other issues on appeal. Williams claims that the admission of the firearms was unfairly prejudicial. As already explained, a ruling denying an objection based on unfair prejudice is very difficult to overturn. Williams faces an additional hurdle in trying to have the guns excluded because the same weapons were admitted in the trial of co-conspirator Green and that admission was recently affirmed by us on appeal.

As we said in *Green,* we have long recognized that in drug trafficking firearms have become "tools of the trade" and thus are probative of the existence of a drug conspiracy. *See also, United States v. Cresta,* 825 F.2d 538, 554 (1st Cir.1987), *cert. denied* [486 U.S. 1042], 108 S.Ct. 2033 [100 L.Ed.2d 618] (1988); *United States v. Montes–Cardenas,* 746 F.2d 771, 777 (11th Cir.1984); *United States v. Perez,* 648 F.2d 219, 224 (5th Cir. unit B), *cert. denied,* 454 U.S. 1055 [102 S.Ct. 602, 70 L.Ed.2d 592] (1981). *Green,* 887 F.2d at 27. One weapon was directly linked to Williams by both Beeche and Gray. Other weapons were linked to the other defendants. We cannot say that the court abused its discretion in admitting the guns. In addition, we note that the

---

**4.** The government contends that the gun to which the judge referred was a "desert eagle" (exhibit 13) that was found in the Fuller Street apartment. It is unclear to us from the written record to which gun the judge referred.

**5.** Even if the issue were properly before us, we doubt that it would be successful because the photograph clearly shows Walters holding a large handgun. This is "sufficient to support a finding that the matter in question is what its proponent claims." Fed.R.Evid. 901(a).

court was aware of the possible prejudice that could result from brandishing guns in the courtroom and took steps to avoid that prejudice.

## III.

 Mattis and Baines take issue with the sufficiency of the evidence presented by the government on a number of issues. When an appellant attacks the sufficiency of the evidence of a criminal conviction, we consider the facts in the light most favorable to the prosecution. *United States v. Serrano*, 870 F.2d 1, 5 (1st Cir.1989); *United States v. Torres–Lopez*, 851 F.2d 520, 527 (1st Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 1144, 103 L.Ed.2d 204 (1989). Our inquiry is limited to whether *any* reasonable juror " 'after viewing the evidence in the light most favorable to the prosecution ... could have found the essential elements of the crime beyond a reasonable doubt.' " *Serrano*, 870 F.2d at 5 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). Assessing the credibility of witnesses is outside the scope of this inquiry. *Serrano*, 870 F.2d at 5. Moreover, the government has no obligation to disprove every reasonable theory of innocence. *Id.* If the record as a whole supports a verdict of guilty beyond a reasonable doubt, the conviction should stand. *Id.*

### A. *Substance was cocaine*

Mattis was convicted of possession of cocaine with an intent to distribute in violation of 21 U.S.C. § 841(a)(1) and using or carrying a firearm during a drug trafficking crime in violation of 18 U.S.C. § 924(c). An essential element of both of these charges is that the defendant possessed cocaine. Mattis argues that the government failed to present sufficient evidence to prove beyond a reasonable doubt that the substance he possessed was cocaine and, therefore, his convictions should be overturned.[6] We disagree.

 The primary source linking Mattis to possession of cocaine comes from two of the government's witnesses, Gray and Beeche, both of whom testified that they saw Mattis involved in selling cocaine from the apartment at 37 Westmore Road. Mattis does not dispute that the witnesses observed him preparing and selling some substance from his apartment but attacks their ability to testify that the substance was cocaine. As a general matter, "[i]dentification of a controlled substance does not require direct evidence if available circumstantial evidence establishes its identity beyond a reasonable doubt." *United States v. Harrell*, 737 F.2d 971, 978 (11th Cir. 1984), *cert. denied*, 469 U.S. 1164, 105 S.Ct. 923, 83 L.Ed.2d 935 (1985); *see also United States v. Meeks*, 857 F.2d 1201, 1204 (8th Cir.1988); *United States v. Osgood*, 794 F.2d 1087, 1095 (5th Cir.), *cert. denied*, 479 U.S. 994, 107 S.Ct. 596, 93 L.Ed.2d 596 (1986); *United States v. Murray*, 753 F.2d 612, 615 (7th Cir.1985); *Paez v. O'Lone*, 772 F.2d 1158, 1159 (3d Cir.1985); *United States v. Scott*, 725 F.2d 43, 45 (4th Cir. 1984). Proof based on scientific analysis or expert testimony is not required to prove the illicit nature of a substance, and identification of a substance as a drug may be based on the opinion of a knowledgeable lay person. *See United States v. Paiva*, 892 F.2d 148, 156–157 (1st Cir.1989). This makes sense because the substance is usually consumed within a comparatively short time. *See United States v. Schrock*, 855 F.2d 327, 334 (6th Cir.1988). As we stated in *Paiva*, "the individual experience and knowledge of a lay witness may establish his or her competence, without qualification as an expert, to express an opinion on a particular subject outside the realm of common knowledge." 892 F.2d at 157.

 In this case, both Lisa Gray and Herbert Beeche testified that they each had used cocaine. Both also testified about knowledge of different aspects of the cocaine distribution process. Gray testified that for a two month period she was at the Westmore Road apartment a minimum of four days a week where she saw Mattis involved in the sale of cocaine approximate-

---

6. Baines meekly raises a similar point in his attack on the conspiracy count and the analysis here applies equally to his claim. *See* Brief for Appellant Baines at 17–18.

ly fifty times. She also testified that he carried a gun during these sales. No objection based on lack of knowledge that the substance was cocaine was raised at trial. In fact, during her cross-examination she testified to her past experience with cocaine and her knowledge of the details of the sales she observed at the defendant's apartment. This testimony included: (1) the range of prices paid to the defendant for the cocaine; (2) the form of packaging that Gray knew was used at the 8 Nelson Street apartment for distributing cocaine; (3) the routine used by the defendants when a customer arrived to purchase the cocaine; and (4) the actual exchange of money for the packages containing cocaine. Considering this testimony together with the rest of the record, we cannot say that the evidence was not sufficient for a reasonable juror to find beyond a reasonable doubt that the substance was cocaine.

Moreover, a small amount of cocaine was found during the search of the Topalian Street apartment where both Mattis and Baines were arrested. There was also a videotape that showed some of the defendants counting money with what appeared to be cocaine visible in the background.

*B. Agreement*

Mattis and Baines also claim that there was insufficient evidence to convict them of conspiracy with intent to distribute cocaine because there was an insufficient showing that either one of them agreed to be part of the conspiracy.

The essence of a conspiracy is agreement. *United States v. Rivera–Santiago,* 872 F.2d 1073, 1079 (1st Cir.1989). The agreement may be express or tacit and may be proved by either direct or circumstantial evidence. *Id.* It is not necessary that the government prove that the defendant participated in interstate trafficking or knew the extent of the conspiracy. "The fact that he participated in one retail link of the distribution chain, knowing that

it extended beyond his individual role [is] sufficient." *Id.* (citing *United States v. Moosey,* 735 F.2d 633, 635–36 (1st Cir. 1984)). Beeche and Gray testified about the acts that Mattis and Baines took in furtherance of the conspiracy; they were more than sufficient for a reasonable juror to find beyond a reasonable doubt that they agreed to participate in the conspiracy. For example, both Gray and Beeche testified that they saw Mattis selling cocaine at Westmore Road. Gray testified that Baines had told her that he had come from Miami because sales had been "coming up short." Baines had also shown Gray where he had hidden "the stuff" during the police search. Finally, Beeche saw Baines preparing cocaine and giving it to Mattis for distribution. Much of this testimony was corroborated by other evidence. These acts, all of which took place in the apartments that functioned as retail outlets for the drug sales, were sufficient for the jury to find that Mattis and Baines were part of a conspiracy to distribute drugs.[7]

## IV.

Mattis also claims that he received such ineffective assistance of counsel that reversal is required. In particular he argues that his lawyer "missed" numerous objections and did not competently cross-examine Gray about the foundation for her belief that the substance was cocaine.

To succeed on an ineffective assistance of counsel claim "a defendant must show that his attorney's performance was deficient and then show that this deficiency prejudiced his defense." *United States v. Caggiano,* 899 F.2d 99, 101 (1st Cir.1990) (citing *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). It is not enough that the defendant merely show some prejudice. He must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

---

7. Mattis also claims that the government failed to show that he used a gun in furtherance of a conspiracy to distribute cocaine because Gray did not specifically describe the gun that he used. But the identity of the gun is not as significant as her testimony that he carried a gun. That testimony was sufficient for a jury to find that he used a gun in furtherance of the conspiracy.

different." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068; *see also United States v. Fuller,* 768 F.2d 343, 346 (1st Cir.1985).

Mattis has demonstrated neither egregious error nor prejudice. As we have already stated, Beeche and Gray were competent to testify that the substance sold was cocaine. Mattis' attorney's failure to cross-examine vigorously or object could either have been the result of a decision not to proceed down a blind alley or because cross-examination or an objection would only have emphasized the damning evidence against Mattis. None of the claimed errors rise even close to the level of changing the result of the trial.

The other issues raised in the briefs do not merit discussion. The convictions of all the defendants are

AFFIRMED.