USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1166 UNITED STATES OF AMERICA, Appellee, v. MICHAEL NASON, Defendant-Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. Morton A. Brody, U.S. District Judge] ___________________ ____________________ Before Torruella, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Cyr, Circuit Judge. _____________ _____________________ J. Michael McGuinness, by Appointment of the Court, with ______________________ whom McGuinness & Parlagreco, was on brief for appellant. _______________________ Margaret D. McGaughey, Assistant United States Attorney, _______________________ with whom Jay P. McCloskey, United States Attorney, was on brief ________________ for appellee. ____________________ November 2, 1993 ____________________ TORRUELLA, Circuit Judge. Appellant Michael Nason was ______________ charged with conspiracy to distribute marijuana in violation of 21 U.S.C. 841(a)(1) & 846 and possession of marijuana in violation of 21 U.S.C. 844(a). Following a trial in the district court, the jury found him guilty as charged. Nason requests that this court reverse his conviction and remand his case for a new trial. On appeal, Nason argues that: (1) the trial court erred in denying his motion for severance of his trial pursuant to Federal Rule of Criminal Procedure 14; (2) this error deprived him of the ability to confront and cross-examine his codefendants in violation of his Sixth Amendment rights; (3) the trial court's instructions regarding conspiracy constituted reversible error; (4) the trial court erred regarding the admission of certain pieces of evidence seized; (5) the cumulative effect of the trial court's errors constituted prejudicial error depriving him of due process and a fair trial; and (6) the pursuit of appellant for the purpose of incriminating him violated his due process rights. Finding appellant's claims to be without merit, we affirm. BACKGROUND BACKGROUND __________ The government charged Michael Nason, Ellen Finch and David Finch with conspiracy to distribute marijuana.1 In addition, the government alleged that Nason conspired to distribute marijuana with numerous other persons who were not indicted. The Maine Drug Enforcement Agency ("MDEA") ____________________ 1 The jury acquitted Ellen and David Finch of these charges. -2- investigation that lead to Nason's conviction focused on Room 332 of the Scottish Inn Motel in Bangor, Maine. Between May 23 and May 29, 1992, Room 332 was registered to Nason's girlfriend, Merry Lane. Shortly thereafter, a desk clerk added Nason's name to the registration card so that his calls could be directed to the room. Nason subsequently received telephone calls in Room 332 and supplies were delivered by the motel maid to him in Room 332. Many individuals visited Room 332, staying for only five to ten minutes, and a black Cadillac was observed in front of the room. The police were notified of this suspicious behavior. When officers reviewed the motel's telephone records, they found that the occupants of Room 332 were calling the telephone numbers of known drug dealers. Officers then decided to establish surveillance of the motel room and Nason. As a part of the investigation, the government enlisted the assistance of drug trafficker Gabriel Zappia in exchange for a plea agreement. Zappia asked his friend, Gilbert Shubert, to arrange for the purchase of marijuana from Nason. In response to Shubert's request, Nason contacted a supplier in order to obtain the marijuana. Nason arranged to sell Zappia the marijuana on May 27, 1992. Nason, Shubert and Zappia went to pick up the marijuana in Zappia's car. Because Nason suspected police surveillance, and Zappia feared that the police would not observe the transaction as previously planned, the two postponed the sale. During the -3- interim, Shubert began to cooperate with the police. Shubert and Nason met at the Ramada Inn on May 28 to complete the drug transaction. Nason told Shubert that he had "the dope" and that he would call his supplier who would deliver it. Nason said that if he had not been serious he would not have brought along white garbage bags. As they were leaving the Ramada Inn, the two men were arrested. At the time of arrest, Nason possessed two white garbage bags, a package of marijuana, and $980 in cash. Nason had arrived at the Ramada Inn in a black Cadillac. After he got out of the Cadillac, the driver of the car drove to the Howard Johnson's nearby and parked facing the Ramada Inn. When Nason was arrested, the driver of the black Cadillac attempted to back out of the motel and ran into a police car. David and Ellen Finch were in the Cadillac. Both were arrested. Nason had been at Room 332 on May 26 and again on May 28, shortly before his arrest. Inside the room, police found a suitcase containing a duffel bag with marijuana residue and a photo album with Nason's name on it. Other items found in the room included scales, two sandwich bags containing marijuana, empty sandwich bags, a programmable police scanner, and a cardboard box with Nason's name on it containing papers and photographs. DENIAL OF MOTION FOR SEVERANCE DENIAL OF MOTION FOR SEVERANCE ______________________________ The decision to order severance of a trial pursuant to -4- Federal Rule of Criminal Procedure 14 is a matter within the discretion of the trial court. United States v. Sabatino, 943 _____________ ________ F.2d 94, 96 (1st Cir. 1991). We reverse the decision to deny a motion for severance only upon a showing of strong prejudice, demonstrating a manifest abuse of discretion that deprived the defendant of a fair trial. United States v. Argencourt, 996 F.2d _____________ __________ 1300, 1304 (1st Cir. 1993). Pursuant to Federal Rule of Criminal Procedure 8(b), defendants may be tried together "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions, constituting an offense or offenses." See Sabatino, 943 F.2d at 96 (quoting United States v. ___ ________ ______________ Sutherland, 929 F.2d 765, 778 (1st Cir. 1991), cert. denied, 116 __________ ____________ L.Ed.2d 56 (1991)). In this case, Nason, David Finch and Ellen Finch were alleged to have participated in the same acts constituting the offenses, hence, they were properly joined for trial. Where a defendant requests a severance to secure the testimony of a codefendant, he must comply with the requirements set forth in United States v. Drougas, 748 F.2d 8, 19 (1st Cir. _____________ _______ 1984): the movant must demonstrate: (1) a bona fide need for the testimony; (2) the substance of the testimony; (3) its exculpatory nature and effect; and (4) that the co-defendant will in fact testify if the cases are severed . . . . Given such a showing, the court should (1) examine the significance of the testimony in relation to the defendant's theory of defense; (2) consider whether the testimony would be subject to -5- substantial damaging impeachment; (3) assess the counter arguments of judicial economy; and (4) give weight to the timeliness of the motion. Id. at 19; see also United States v. Font-Ram rez, 944 F.2d 42, ___ _________ _____________ ____________ 45 (1st Cir. 1991), cert. denied, 117 L.Ed.2d 122 (1992). ____________ Nason alleged that his co-defendants, Ellen and David Finch, would testify that there was no conspiracy among the three. Standing alone, however, such an allegation is insufficient to entitle the defendant to a severance. Nason did not show, as required, that either David or Ellen Finch would in fact testify for Nason at a separate trial. He did not file an affidavit from either David or Ellen to that effect. See ___ Drougas, 748 F.2d at 19; see also Font-Ram rez, 944 F.2d at 45. _______ ________ ____________ Nor did counsel for the Finchs represent that either David or Ellen Finch would testify for Nason at a separate trial. See ___ DeLuna, 763 F.2d at 920 (counsel for co-defendant stating in ______ __ camera that client would testify if trials were severed is ______ sufficient to show that co-defendant is likely to testify). Furthermore, Nason did not show, as required, that the Finchs' testimony would exculpate him. United States v. Perkins, 926 _____________ _______ F.2d 1271, 1281 (1st Cir. 1991) (citing United States v. DeLuna, _____________ ______ 763 F.2d 897, 920 (8th Cir. 1985), cert. denied, 474 U.S. 980 _____________ (1985)); see also Font-Ram rez, 944 F.2d at 45 (denial of motion ________ ____________ for severance was not an abuse of discretion where co-defendant's affidavit in support of the motion did not provide the substance of the testimony and did not explain why the testimony was necessary or beneficial to the defense). The evidence -6- demonstrated that Nason conspired with a number of people other than David and Ellen Finch. Other potential conspirators included Shubert, Merry Lane, and the supplier whom Nason contacted. Thus, even without a finding of a conspiratorial agreement with the Finchs, the government still had a strong conspiracy case against Nason. This conclusion is evident from the outcome of the joint trial, as the jury acquitted both Ellen and David Finch yet convicted Nason of conspiracy. Since Nason did not make the preliminary showing that encompasses the first four factors of the severance test set out in Drougas, we need not examine whether the other criteria were _______ met. We therefore hold that the judge below did not abuse his discretion in denying Nason's motion for severance. SUFFICIENCY OF THE EVIDENCE SUFFICIENCY OF THE EVIDENCE ___________________________ On appeal, we look at the evidence in the light most favorable to the prosecution. United States v. Sabatino, 943 _____________ ________ F.2d at 97 (citing United States v. MacDonald & Watson Oil Co., ______________ __________________________ 933 F.2d 35, 40 (1st Cir. 1991)). We draw all legitimate inferences and resolve all credibility conflicts in favor of the prosecution. Id. We will uphold the verdict if any reasonable ___ trier of fact could have found the elements of the offense beyond a reasonable doubt. Id. (citing United States v. Mena, 933 F.2d ___ _____________ ____ 19, 23 (1st Cir. 1991)). Nason argues that the trial court erred in not dismissing the charges against him at the close of the government's case due to insufficient evidence. In essence, he -7- argues that the evidence of conspiracy is inadequate because there was no second person who conspired with Nason to either distribute or possess marijuana. The record does not support this argument. A defendant can be indicted and convicted even if the names of his co-conspirators are unknown, as long as the government presents evidence of an agreement between two or more persons. United States v. Rey, 923 F.2d 1217, 1222 (6th Cir. _____________ ___ 1991); see also United States v. Pe agar cano-Soler, 911 F.2d _________ ______________ __________________ 833, 840 n.5 (1st Cir. 1990). The essence of a conspiracy is the existence of the conspiracy agreement, not the identity of those who agree. Rey, 923 F.2d at 1222 (citations omitted). ___ At trial, sufficient evidence was presented from which a jury could conclude that a conspiracy existed. Testimony was given about other persons with whom the jury could have concluded that Nason entered an agreement to violate the law. These include Nason's girlfriend, Merry Lane, who rented the room that was the focus of the drug activity and in which the agents found marijuana; Shubert, a potential drug purchaser who later decided to cooperate with the police; and Nason's drug supplier, whom Nason telephoned to arrange the drug transaction. The jury also could have found that the unknown occupants of several cars, who entered Room 332, were co-conspirators. See United States v. ___ ______________ Moree, 897 F.2d 1329, 1332 (5th Cir. 1990) (evidence of agreement _____ with unnamed contacts, among others, was sufficient evidence for conspiracy conviction as government produced sufficient evidence -8- to form a rational basis for the jury's adjudications). SIXTH AMENDMENT CLAIMS SIXTH AMENDMENT CLAIMS ______________________ Nason argues that testimony by government agent Antone based on his interview of codefendant Ellen Finch violated his right of cross-examination and Sixth Amendment right to confront witnesses against him because Nason was not able to confront and cross-examine Ellen Finch. U.S. Const. amend. VI. Agent Antone's testimony concerned a note, purportedly written by Nason, that was found in the Finchs' car at the time of the arrests. Nason failed to object when Agent Antone testified about the note. In the absence of a timely objection our review is limited to examining the record for plain error, and we will "correct only 'particularly egregious errors' . . . that 'seriously affect the fairness, integrity or public reputation of judicial proceedings.'" United States v. Young, _____________ _____ 470 U.S. 1, 15, 105 S. Ct. 1038, 1046, 84 L.Ed.2d 1 (1985) (quoting United States v. Frady, 456 U.S. 152, 163, 102 S. Ct. _____________ _____ 1584, 1592, 71 L.Ed.2d 816 (1982)); United States v. Munson, 819 _____________ ______ F.2d 337, 340 (1st Cir. 1987). Agent Antone's testimony was based on his post arrest interview of Ellen Finch during which she indicated that when she and her husband drove Nason to the Ramada Inn, she gave Nason a piece of paper and a pen. She gave Nason a second pen because the first one did not work. She did not see Nason write on the paper. When questioned about a piece of paper found in her car, she indicated that the writing on the paper was not hers and that -9- she did not know whose it was. There was no confrontation clause violation. Ellen Finch's statements to Agent Antone did not have the "powerfully incriminating effect of one accomplice pointing the finger directly at another, without subjecting [her]self to cross- examination," amounting to a violation of the Sixth Amendment. United States v. Barnett, 989 F.2d 546, 558 (1st Cir. 1993), ______________ _______ cert. denied, 62 U.S.L.W. 33247 (1993) (internal quotations and ____________ citations omitted); see also Bruton v. United States, 391 U.S. ________ ______ ______________ 123, 135 (1968). Hence, we find no plain error in admission of the testimony by Agent Antone regarding the note found in Ellen Finch's car. Nason further argues that the introduction, over his objection, of testimony of MDEA agent Daryl Crandale, that Ellen Finch had told him that she knew Nason had been in trouble with drugs before, also deprived him of his Sixth Amendment right to confrontation. We find this argument to be without merit. Following the testimony of Agent Crandale, the district court promptly gave a limiting instruction that confined the jury's consideration of that evidence to Ellen Finch's state of mind. This court has previously indicated that limiting instructions provide an adequate safeguard against evidentiary spill-over. United States v. Doherty, 867 F.2d 47, 63 (1st Cir. _____________ _______ 1989), cert. denied, 412 U.S. 918 (1989) (citing Drougas, 748 ____________ _______ F.2d at 13). In any event, any error in admitting Ellen's statement was harmless. See Manocchio v. Moran, 919 F.2d 770, ___ _________ _____ -10- 783-84 (1st Cir. 1990), cert. denied, 114 L.Ed.2d 89 (1991) ____________ (subjecting material which creates Sixth Amendment Confrontation Clause problems to harmless error analysis). Other evidence in the record included recorded conversations between Nason and the undercover informant in which Nason boasts about his twenty years of drug dealings and freedom from arrests. This evidence was substantially more damaging to Nason than was Ellen's comment. JURY INSTRUCTIONS JURY INSTRUCTIONS _________________ By failing to object to the jury instructions after the charge was given, Nason waived any such objections. Wartski v. _______ Bedford, 926 F.2d 11, 22 (1st Cir. 1991). Although Nason filed _______ requests to charge before trial began and noted objections at the chambers conference regarding the court's proposed instruction, he did not object to the instructions after the charge was given. An objection noted in chambers before delivery does not preserve for review issues relating to the charge. United States v. _____________ Edilberto, 950 F.2d 1, 4 (1st Cir. 1991). Where a party has _________ failed to preserve a claim for error by proper objection below, this court will review the issue on appeal only for plain error. United States v. McMahon, 938 F.2d 1501, 1510 (1st Cir. 1991). _____________ _______ Thus, reversal will follow only in "exceptional cases or under peculiar circumstances to prevent a clear miscarriage of justice." United States v. Griffin, 818 F.2d 97, 100 (1st Cir. _____________ _______ 1987), cert. denied, 484 U.S. 844 (1987) (quotation omitted). ____________ This court has held that the failure to give a requested jury instruction is reversible error only if the -11- requested instruction is substantially correct, was not substantially covered in the charge actually given, and covers an important point in the trial so that the failure to give it seriously impaired the defendant's ability to present a given defense. United States v. Newton, 891 F.2d 944, 949 (1st Cir. ______________ ______ 1989). In describing the elements of a conspiracy, the district court told the jury: you must be convinced that the government has proved . . . beyond a reasonable doubt . . . the existence of an agreement. The government must show that some time between May 21, 1992, and May 28, 1992, the agreement specified in the indictment, and not some other agreement or agreements, existed between at least two people, not including government agents, to commit the enumerated federal crime. This does not have to be a formal agreement or plan in which everyone who is involved sat down together and worked out the details. It is enough that the government prove beyond a reasonable doubt that there was a common agreement among those who were involved to commit the crime of distributing marijuana . . . . It is not necessary to find that the individual defendants agreed specifically to or knew about all the details of the crime, but the government must prove that the defendants knew the essential features and the general aims of the venture . . . . [T]he government must prove . . . there was an agreement to commit the crime . . . and that the defendant intentionally joined in that agreement. The court's instructions substantially covered the -12- legal concepts requested by Nason in his proposed instructions.2 Having covered the necessary and requested principles of law, the district court did not err. Nason also requested an instruction on withdrawal from a conspiracy.3 A defendant is entitled to instructions on his theory of defense if he produces some evidence to support all ____________________ 2 Nason's first two proposed instructions were as follows: #1. As it takes two to conspire, there can be no conspiracy with a government informer who secretly intends to frustrate the conspiracy. United States _____________ v. Debright, 742 F.2d 1196, 1198-1200 ________ (9th Cir. 1984). #2. Any conspiracy "agreement" must be complete. There must exist proof beyond a reasonable doubt that there existed a "meeting of the minds" between the defendant and an alleged co-conspirator. The jury must consider whether a Defendant's insistence on certain conditions precedent, where those conditions are unacceptable to his would- be co-conspirators, prevented a "meeting of the minds" so that no complete agreement existed. United States v. ______________ Melchor-L pez, 627 F.2d 886 (9th Cir. _____________ 1980). 3 Nason proposed the following instruction: #3. An alleged conspirator may withdraw from membership in the conspiracy. There must exist evidence that the Defendant abandoned, withdrew from, or disavowed the conspiracy or defeated its purpose. Once evidence of withdrawal has been presented, the government must disprove withdrawal beyond a reasonable doubt. Hyde v. United States, 225 U.S. ____ _____________ 347 (1912); United States v. Krasn, 614 ______________ _____ F.2d 1229 (9th Cir. 1980); United States ______________ v. Read, 658 F.2d 1225 (7th Cir. 1981). ____ -13- elements of his theory. See United States v. Panet-Collazo, 960 ___ _____________ _____________ F.2d 256, 259 (1st Cir. 1992), cert. denied, 121 L.Ed.2d 158 ____________ (1992). In order to withdraw, a conspirator must: act affirmatively either to defeat or disavow the purposes of the conspiracy. Typically, there must be evidence either of a full confession to authorities or a communication by the accused to his co- conspirators that he has abandoned the enterprise and its goals. United States v. Juodakis, 834 F.2d 1099, 1102 (1st Cir. 1987) _____________ ________ (citations omitted). This court has held that "[m]ere cessation of activity in furtherance of [a] conspiracy does not constitute withdrawal." Juodakis, 834 F.2d at 1102 (citations omitted). ________ Nason's refusal to agree to Shubert's proposed terms of the sale, after which he got up and left the Ramada Inn, is not sufficient evidence of withdrawal to require an instruction on that defense. Thus, we find that the trial court's refusal to give Nason's proposed instruction on withdrawal did not constitute plain error. EVIDENTIARY ISSUES EVIDENTIARY ISSUES __________________ Appellant argues that the trial court erred in admitting into evidence items such as scales, bags, and baggies, seized from Room 332 of the Scottish Inn, which was registered to his girlfriend, Merry Lane. He argues that there was no evidence that he occupied Room 332 and that the evidence was not sufficiently linked to Nason to make its admission permissible. In essence, he argues that the admission into evidence of items seized from Room 332 was irrelevant, highly prejudicial and in -14- violation of Rule 403 of the Rules of Evidence. The threshold for relevance is very low under Federal Rule of Evidence 401. United States v. Rodr guez-Cort s, 949 ______________ ________________ F.2d 532, 542 (1st Cir. 1991). Evidence is relevant under Rule 401 if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Even where evidence is relevant, Rule 403 permits the district court, in its discretion, to exclude evidence where the "probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403,4 see ___ also United States v. Williams, 985 F.2d 634, 637 (1st Cir. ____ _____________ ________ 1993); United States v. Gonz lez-S nchez, 825 F.2d 572, 580 (1st _____________ ________________ Cir. 1987), cert. denied, 484 U.S. 989 (1987). We review the _____________ district court's weighing of the evidence for abuse of discretion. United States v. Walters, 904 F.2d 765, 768 (1st _____________ _______ Cir. 1990); Gonz lez-S nchez, 825 F.2d at 580. ________________ Although Room 332 was registered to Merry Lane, Nason was strongly connected to it. Nason's name was noted on the registration card to the motel room so that incoming calls could ____________________ 4 Fed. R. Evid. 403 states: Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. -15- be directed to him. In fact, a number of people called Nason at the motel room. Nason gave Shubert the motel's telephone number as a place to reach him and Shubert called Nason at the motel to discuss Nason's interest in reviving the deal. Nason was seen at Room 332 by the maid, two custodians, the owner of the motel, and the police officers who photographed him. Furthermore, inside the room, inside a suitcase, beside a duffle bag containing marijuana residue, was an album that contained photographs of Nason and had Nason's name written on it. The above factors indicated that Nason had been in the room with the marijuana and made the evidence found in the room relevant to his participation in a conspiracy. The objects found in Room 332 are also probative of the conspirators' intent to distribute marijuana and were not likely to suggest a decision on an improper basis to the jury. Although the evidence may be damaging to Nason's case, it is not unfairly prejudicial. See Rey, 923 F.2d at 1222 ___ ___ (admission of electronic equipment and books not unfairly prejudicial in trial for drug charge). The district court did not abuse its discretion in admitting that evidence. MISCELLANEOUS MISCELLANEOUS _____________ Appellant raises two further arguments that were not raised before the district court. First, he argues that, by targeting him for investigation, law enforcement agents violated his due process rights. This court has previously ruled that: arguments not seasonably addressed to the trial court may not be raised for the first time in an appellate venue . . . . A criminal defendant, dissatisfied with -16- the district court's rulings . . . yet persuaded that his original arguments lacked merit, cannot switch horses mid- stream in hopes of locating a swifter steed. See United States v. Deitz, 950 F.2d 50, 55 (1st Cir. 1991) ___ ______________ _____ (citations omitted). Second, appellant argues that his sentence, premised upon career offender status, is invalid and that the sentence should therefore be vacated and the matter remanded for imposition of sentence. See United States v. Price, 990 F.2d ___ _____________ _____ 1367 (D.C. Cir. 1993) (career offender guidelines do not apply to conspiracy to commit controlled substance crimes). Nason made this second argument in a letter filed pursuant to Federal Rule of Appellate Procedure 28(j). He did not make this argument in his brief, and "a letter submitted pursuant to Rule 28(j) cannot ______ raise a new issue." United States v. LaPierre, 998 F.2d 1460, _____________ ________ 1466 n.5 (9th Cir. 1993), amended, 1993 U.S. App. LEXIS 20872 _______ (9th Cir. Aug. 19, 1993), (citing Brady v. Gebbie, 859 F.2d 1543, _____ ______ 1557 n.13 (9th Cir. 1988)). Affirmed. ________ -17-